UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESCORT, INC.,  Case No. 1:18-cv-323
    Plaintiff,  Dlott, J.
  Litkovitz, M.J.

vs.

NOLIMITS ENTERPRISES, INC.,  **REPORT AND**
    Defendant.  **RECOMMENDATION**

This matter is before the Court on plaintiff's motion to disqualify counsel (Doc. 17), defendant's opposing memorandum (Doc. 21), and plaintiff's reply memorandum in support of its motion for disqualification (Doc. 22). Plaintiff Escort, Inc. (Escort) seeks disqualification of defendant noLimits Enterprises, Inc.'s (NLE's) counsel Eric Wade Richardson, Jacob D. Mahle and Jessica Kinnan Baverman and the law firm of Vorys, Sater, Seymour & Pease LLP (Vorys) on the basis of a conflict of interest arising from a prior attorney-client relationship between plaintiff Escort and Vorys. For the reasons that follow, the Court recommends that the motion to disqualify counsel be denied.

**I.    Background**

Plaintiff Escort brings this action against NLE alleging patent infringement of its radar and laser detectors. (Doc. 1). Escort seeks the following relief: monetary damages as compensation for NLE's alleged patent infringement; any additional damages allowed by the Court under 35 U.S.C. § 284[1]; preliminary and permanent injunctive relief against further infringement of the patents or, in the alternative, awarding an ongoing royalty for each infringing NLE product, including any future products that contain the infringing features of the accused

---

[1] Section 284 allows the court to assess damages when they are not found by a jury and to increase the damages up to three times the amount found by the jury or assessed by the court. 35 U.S.C. § 284.

products; an award of attorney fees and costs under 35 U.S.C. § 285 on the ground this case is exceptional; all taxable costs and pre-judgment and post-judgment interest; and such other relief that the Court finds is just and proper.

Plaintiff Escort asserts that counsel for defendant NLE should be disqualified because from August 2017 to the first quarter of 2018, Escort's parent company, Cedar Electronics Holding Corp. (Cedar Electronics), engaged NLE's counsel, Vorys, to represent Escort on matters relating to price erosion.[2] (Doc. 17 at 2-3; Doc. 17-1, Megan O'Laughlin, Esq., Declaration, Exh. A- Vorys/Cedar Electronics August 21, 2017 engagement letter). Escort contends that shortly thereafter on March 8, 2018, Escort sent its first demand to NLE concerning NLE's alleged infringement of Escort's patents. (Doc. 17 at 3). Escort asserts that Vorys contacted it on behalf of NLE. (*Id.*). Escort advised Vorys that the firm had represented Escort "on issues pertaining to Minimum Advertised Price Matters" and informed Vorys that Escort would be seeking price erosion damages in the current litigation. (*Id.*; Doc. 17-1, O'Laughlin Declaration, Exh. B). Escort demanded that Vorys decline representation of NLE due to its alleged conflict. (*Id*).

Escort alleges that both the prior representation and this lawsuit involve the issue of price erosion. (Doc. 17 at 5). Escort claims that the previous action involved price erosion caused by "unauthorized online product diversion," and this lawsuit involves price erosion caused by patent infringement. (Doc. 22 at 4-5). Escort alleges that Vorys cannot represent NLE in this case against Escort's claims of price erosion caused by patent infringement because Vorys is privy to

---

[2] Price erosion is a measure of damages based on "[l]ost revenue caused by a reduction in the market price of a patented good due to infringement" and is "a legitimate element of compensatory damages" for patent infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013).

confidential information related to price erosion by virtue of its prior representation of Escort. (*Id*. at 3).

NLE denies that there is a conflict of interest, and Vorys has declined to withdraw as counsel for NLE. (Doc. 21). NLE acknowledges that Vorys previously represented Escort in connection with its online seller enforcement program. (*Id*. at 1). NLE asserts that on behalf of Escort, Vorys sought to identify and stop third parties from unlawfully selling products via the internet that bore Escort's trademarks and that differed materially from products sold by authorized sellers of Escort products. (*Id*.). NLE asserts that Vorys assisted Escort with identifying and removing unauthorized sellers of Escort's products and identifying authorized sellers of Escort's products that were violating Escort's policies. (Doc. 21, Exh. 1, Adam C. Sherman, Esq., Declaration). Vorys sent cease and desist letters and negotiated resolutions with the unauthorized sellers. (Doc. 21 at 2; Doc. 17-1, O'Laughlin Declaration, Exh. A). Mr. Sherman, a partner with Vorys, states that the firm "assisted Escort in preventing what is known as 'price erosion'," which counsel described in this context as follows:

> Price erosion occurs when unauthorized sellers offer a product for sale that is not subject to the manufacturer's quality control or is materially different from authentic products, at a lower price compared to authentic products by authorized sellers. This causes authorized sellers of authentic products to reduce their prices in order to compete with the unauthorized sellers.

(Doc. 21, Exh. 1, Sherman Declaration, ¶ 7). NLE acknowledges that after Vorys' representation of Escort had concluded, NLE retained Vorys to represent it in this action. (Doc. 21 at 3).

NLE claims that there is no conflict of interest because Vorys' representation of it in this case is unrelated to Vorys' representation of Escort in the unauthorized sales action. (Doc. 21). NLE alleges that the nature of the claims differs because the prior matter involved trademark infringement whereas this action involves patent infringement; the subject matter and factual

3

issues are not the same because the prior action involved the unauthorized internet sales of Escort's own branded products whereas this case involves alleged infringement of Escort's patents by NLE's products; Vorys never had any discussion with Escort related to its patents and did not obtain confidential pricing information that could materially advance NLE's position in connection with its representation of Escort in this case; even if Vorys had obtained such pricing information, the information is irrelevant to Escort's claims in this case; and even if such pricing information were relevant, the information would necessarily be discoverable and would have to be disclosed by Escort during the course of the litigation. (*Id*. at 4-5, 7-12).

In its reply, Escort argues that while NLE attempts to distinguish the prior matter from this case on the ground Vorys represented Escort in connection with trademark matters and this case involves patent infringement, there is substantial overlap. (Doc. 22). Escort argues that the cause of any lost revenue it suffered will be contested in this lawsuit. Escort alleges it will claim that it lost revenue as a result of a reduction in the market price of its patented products due to NLE's infringement, and NLE will counter that the loss resulted from other factors on which Vorys counseled Escort. Escort argues that by accepting representation of NLE in this matter, Vorys will therefore be placed in the position of "attack[ing] Escort on the very subject on which it rendered advice and provided services." (*Id*. at 1).

**II.    Standard for disqualification**

The codified Rules of Professional Conduct govern questions of lawyer disqualification. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 466 F.3d 456, 457 (6th Cir. 2006), *vacated in part on other grounds*, 472 F.3d 436 (6th Cir. 2007). In this district, the Ohio Rules of Professional Conduct govern whether disqualification of counsel is warranted because of a conflict of interest arising from the representation of a former client. *See OneBeacon*

4

*America Ins. Co. v. Safeco Ins. Co.*, No. 1:07-cv-358, 2008 WL 4059836, at *2 (S.D. Ohio Aug. 25, 2008) (citing *Yates v. Dicks*, 209 F.R.D. 143, 150 (S.D. Ohio 2002)). *See also* S.D. Ohio Civ. R. 83.3(f) (providing that the conduct of attorneys and the supervision of their conduct in this Court "shall be governed by the Model Federal Rules of Disciplinary Enforcement," which in turn provide that this Court abides by "the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits.").[3]

The duty of a lawyer to a former client is governed by Ohio R. Prof. Cond. 1.9, which provides in part:

> (a) Unless the former client gives *informed consent*, *confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client.

Ohio R. Prof. Cond. 1.9(a) (emphasis in the original). "An attorney-client relationship includes the representation of a client in court proceedings, advice to a client, and any action on a client's behalf that is connected with the law." *Hamrick v. Union Tp., Ohio,* 79 F. Supp.2d 871, 875 (S.D. Ohio 1999) (citing *Landis v. Hunt,* 610 N.E.2d 554, 558-59 (Ohio App. 10th Dist. 1992)).

The term "shall" as used in Rule 1.9(a) "requires mandatory disqualification" when the circumstances defined in the rule are present. *R.E. Kramig Co., Inc. v. Resolute Management, Inc.*, No. 1:07-cv-658, 2009 WL 1395342, at *4 (S.D. Ohio May 18, 2009) (citing *OneBeacon*, 2008 WL 4059836, at *2). The term "substantially related matter" as used in the rule is defined to mean "one that involves the same transaction or legal dispute or one in which there is a substantial risk that confidential factual information that would normally have been obtained in

---

[3] Ohio adopted the Rules of Professional Conduct in 2007 to replace the Ohio Code of Professional Responsibility. *See Carnegie Cos., Inc. v. Summit Properties, Inc.,* 918 N.E.2d 1052, 1060 (Ohio App. 9th Dist. 2009).

5

the prior representation of a client would materially advance the position of another client in a subsequent matter." Ohio R. Prof. Cond. 1.0(n). General knowledge of an organizational client's policies and practices ordinarily will not preclude subsequent representation. Ohio R. Prof. Cond. 1.9, Comment (3). Knowledge of specific facts obtained in a prior representation that are relevant to the subsequent matter ordinarily will preclude the subsequent representation. *Id.* The party seeking disqualification has the burden of proof to show that "the matter or cause of action of the previous representation of the former client is substantially related to the matters of the current suit." *Best v. Mobile Streams, Inc.,* No. 1:12-cv-564, 2013 WL 122108, at *4 (S.D. Ohio Jan. 9, 2013) (citing *OneBeacon* 2008 WL 4059836, at *3).

The Ohio Rules of Professional Conduct provide: "While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rule . . . 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." Ohio R. Prof. Cond. 1.10(a).

**III. Resolution**

There is no question in this case that plaintiff Escort is a former client of Vorys. Further, NLE's interests are materially adverse to those of Escort in this matter. Thus, the sole issue raised by the motion to disqualify is whether Escort has carried its burden to show that its patent infringement action against NLE is "substantially related" to the trademark enforcement services Vorys performed as counsel for Escort.

Escort has not shown there is a substantial relationship between this lawsuit and the prior enforcement action under Ohio Rule 1.0(n). The two matters do not involve "the same

6

transaction or legal dispute." *See* Ohio R. Prof. Cond. 1.0(n). Escort retained Vorys to pursue legal action against online sellers of Escort products that purportedly violated Escort's trademark rights. The legal dispute between the parties here involves products that NLE allegedly "uses, manufactures, sells, offers to sell and/or imports into the United States" and which purportedly infringe Escort's patents. (Doc. 1). Escort has not shown there is an overlap of legal issues between Escort's enforcement action against unauthorized sellers of Escort products and its lawsuit against NLE for defendant's sale and manufacture of its products that allegedly infringe Escort's patents.

Escort argues that the trademark enforcement action and this patent infringement lawsuit are nonetheless "substantially related" because "there is a substantial risk that confidential factual information that would normally have been obtained in the representation of [Escort] would materially advance the position of [NLE]" in this matter. *See* Ohio R. Prof. Cond. 1.0(n). Specifically, Escort claims that "Vorys has access to Escort's private communications concerning price erosion issues," which NLE cannot seek through discovery and Vorys cannot disclose. (Doc. 17 at 6, citing Doc. 17-1, O'Laughlin Declaration, Exh. A). Escort suggests that Vorys "engage[d] in communications concerning price erosion with Escort that were ***and remain*** protected by the attorney client privilege. . . ." (*Id.* at 7) (emphasis in the original). Escort argues there is a substantial risk that Vorys obtained confidential factual information related to price erosion in the course of its prior representation because it retained Vorys to pursue enforcement actions against parties whose unauthorized sales caused price erosion. Escort asserts that NLE has now retained Vorys to defend it against Escort's claims of patent infringement and to contest damages which include price erosion. Escort argues that it follows that the confidential information related to price erosion that Vorys has obtained would

7

materially advance NLE's position that it is not responsible for any price erosion that has resulted from its alleged infringement of Escort's patents.

NLE denies there is a risk that Vorys obtained confidential product pricing information that would materially advance NLE's position in this lawsuit. (Doc. 21). NLE contends that Escort's product prices are publicly available and are not confidential. Further, NLE asserts that Escort's pricing and sales data must be disclosed to NLE during discovery in this litigation if Escort intends to pursue price erosion damages. (Doc. 21 at 9, citing *Baryo v. Philip Morris USA, Inc.*, No. 05-1182, 2007 WL 2084111, at *3 (W.D. Mo. July 17, 2007) (court found that assuming counsel had obtained and retained information about a non-client during a prior representation, it was difficult to see how counsel's possession of information that it was entitled to discover in the present lawsuit could warrant the firm's disqualification)). In addition, NLE argues that Escort has failed to identify any "private communications concerning price erosion issues" that Vorys was allegedly privy to that would not be discoverable in this litigation. (*Id.* at 11).

The Court finds that Escort has not carried its burden to show there is a substantial risk that Vorys obtained "confidential factual information" in the course of representing Escort that would "materially advance the position of" NLE in this litigation. *See* Ohio R. Prof. Cond. 1.0(n). Escort is "not required to reveal the confidential information learned by [Vorys] in order to establish a substantial risk that [Vorys] has confidential information to use in [this] matter. A conclusion about the possession of such information may be based on the nature of the services [Vorys] provided [Escort] and information that would in ordinary practice be learned by a lawyer providing such services." *See* Ohio R. Prof. Cond. 1.9, Comment (3).

Nonetheless, it is not clear from the nature of the services Vorys provided to Escort that Vorys would have obtained confidential information related to Escort pricing matters and price erosion. To show that Vorys obtained confidential Escort communications of this nature, Escort cites the August 2017 engagement letter describing the legal services Vorys agreed to provide to Escort. The letter establishes that Vorys would provide services "to address online price erosion and the unauthorized sales of certain Cedar products" through "monthly unauthorized seller enforcement services to identify, remove, and stop those who divert Cedar's products and/or sell them on . . . public internet forums." (Doc. 17-1, O'Laughlin Declaration, Exh. A). The letter identified particular strategies to identify and stop unauthorized sellers of Escort's products. The letter does not, however, specifically address Escort's pricing policy or the calculation and recovery of damages caused by unauthorized sellers' actions. Thus, it is not clear from the letter that the legal services Vorys provided necessarily entailed the disclosure of Escort's confidential pricing information and price erosion.

Escort has not provided any other evidence to show that the services Vorys performed for Escort likely entailed the disclosure of "confidential factual information" related to Escort's pricing policies and price erosion that is of relevance to NLE's defense of this lawsuit and which could be used to NLE's advantage in this case. Escort simply alleges there are prior "privileged communications" with Vorys "relating to the market conditions relevant to causation - specifically, unauthorized online product diversion" - which are also relevant to this case. (Doc. 22 at 5). However, Escort has not alleged or shown that any underlying factual information related to "market conditions" that was disclosed to Vorys in the "privileged communications" is confidential and is not otherwise discoverable in this lawsuit. Factual information about market conditions, including unauthorized online product diversion, is relevant here given the nature of

9

Escort's claims and its burden of proof. If Escort proves patent infringement by NLE, Escort has the burden to prove NLE's infringement was the cause of alleged price erosion. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001) (to establish entitlement to price erosion damages, burden is on patentee "to show that 'but for' infringement, it would have sold its product at higher prices"). To carry its burden, Escort will have to rebut NLE's anticipated defense that other factors, such as unauthorized third-party sellers of Escort products, were the cause. Both Escort and NLE are entitled to conduct discovery in this litigation related to market conditions and price erosion: Escort for the purpose of establishing and proving its damages, and NLE for the purpose of rebutting Escort's damages claim. Because factual information related to market conditions and price erosion is relevant and therefore subject to discovery by both parties, there is not a substantial risk that Vorys' receipt of "privileged communications" conveying such information during its prior representation of Escort would materially advance NLE's position in this lawsuit. The requirements of Ohio R. Prof. Cond. 1.0(n) are not satisfied.

Escort has not carried its burden to show that the prior trademark enforcement action is substantially related to the matters at issue in the current patent infringement lawsuit. Disqualification of the Vorys firm and the individual members of the firm in this lawsuit is not warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's motion to disqualify counsel (Doc. 17) be **DENIED**.

Date: November 20, 2018                            s/ Karen L. Litkovitz
                                                   Karen L. Litkovitz
                                                   United States Magistrate Judge

10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ESCORT, INC., <br>     Plaintiff, | Case No. 1:18-cv-323 <br> Dlott, J. <br> Litkovitz, M.J. |
| vs. | |
| NOLIMITS ENTERPRISES, INC., <br>     Defendant. | |

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).